## Texas Mexican Railway Company v. J. P. Reed.

### Decided June 16, 1909.

**1.—Railway—Freight Rates—Discrimination.**

While there is no affirmative provision of the statute forbidding a railroad from fixing a lower rate for the transportation of freight than that prescribed by the Railroad Commission, the statute does prohibit discrimination by charging one shipper a different rate from that charged another, and it seems that unless the lower rate charged in the particular case is shown to have been open to all shippers, a special contract at such rate would be void because prohibited by the statute against discrimination.

**2.—Same—Contract of Carriage—Mistake.**

Where it was the intention of both parties to the contract for the carriage of cattle that the regular or commission rate should be charged, and a lower rate was specified in the contract by mistake, there was no discrimination.

**3.—Same—Contract of Carriage.**

Where the undisputed evidence showed that the parties to the contract intended to ship the cattle at the regular or commission rate, and a lower rate was inserted in the contract by mistake, a notation at the head of the contract that the rate therein named was subject to correction so as to conform to the rate prescribed by the Railroad Commission, did not change the contract actually made, and the question whether or not the notation was a part of the contract was immaterial.

**4.—Same—Detention of Cattle for Charges.**

Where the parties to the contract for the carriage of cattle intended that

the cattle should be shipped at the regular or commission rate, and a lower rate was inserted in the contract by mistake, and was paid by the shipper to the initial carrier, the shipper was liable for an additional charge for the difference, and the terminal carrier, having the right under the statute to hold all of said cattle until all the freight was paid, could not be held liable for injury to the cattle caused by their detention by it on the refusal of the shipper to pay such additional charge, whether such carrier was a party to the original contract or not.

### 5.—Same—Connecting Carriers—Contract.

The connecting carrier is bound under the law to accept and forward a shipment of cattle and its acceptance of the shipment does not necessarily bind it to carry out the contract made with the initial carrier.

### 6.—Same.

Where the evidence showed that when the terminal carrier received the cattle for transportation new contracts were made with the shipper, but did not show the terms of such contracts, it could not be presumed that they bound such carrier to ship the cattle at a rate less than that allowed by law, nor could a contract of that kind be implied merely from the fact that its agent, who received and forwarded the shipment to destination was informed that the freight had been paid and knew the amount which had been paid to the initial carrier. It was not the duty of such agent to determine whether the amount so paid was the correct amount, but the duty of the agent at destination when the shipment was delivered to the shipper or consignee.

### 7.—Damages—Proximate Cause.

Damages which could not be reasonably anticipated as the probable result of an act or omission can not be held to have been proximately caused by such act or omission.

### 8.—Same—Carriers—Negligence.

Where the shipper was liable for the additional charge demanded by the terminal carrier, and his refusal to pay it caused the carrier to detain his cattle, and it appeared that he had the money in his pocket to pay the charge, negligence on the part of the initial carrier in quoting him an incorrect rate was not the proximate cause of the damage resulting from the detention of the cattle.

Appeal from the District Court of Goliad County. Tried below before Hon. James C. Wilson.

*A. E. Atlee, Proctor, Vanderberger & Crain* and *Fowler & Fowler,* for appellant.

*G. E. Pope* and *H. J. Passmore,* for appellee.—In intrastate shipments in Texas a railroad company can legally contract for a lower rate of freight than that prescribed by the railroad commission of Texas. Thompson v. San Antonio & A. P. Ry. Co., 32 S. W., 427; Express Co. v. Williams, 71 S. W., 314; Acts 1899, p. 70; Hutch., Carriers (3d ed.), sec. 594; Rev. Stats., arts. 4573, 4574.

Where an initial carrier receives freight destined for a point on the line of a connecting carrier, and such initial carrier agrees to a rate of freight and collects same for the through transportation, specifying the rate in the shipping contract, and in such contract agrees with the shipper to protect him in such through rate of freight, and such terminal and connecting carrier, with knowledge of the fact that the freight charges have been paid, receives and transports such freight

over its line of railway to point of destination, such terminal carrier can not collect from the shipper any additional freight, although the rate of freight charged and collected by the initial carrier is lower than the commission rate, and although the rate of freight charged and collected by the initial carrier was not authorized by the terminal carrier, and such terminal carrier is liable to the shipper for any damages to such freight resulting from the terminal carrier holding such freight in an effort to collect an additional amount of freight. So. K. Ry. v. Burgess Co., 90 S. W., 189; Hutchinson on Car., vol. 2, sec. 867 (3d ed.), and notes; Railway Co. v. Dismukes, 17 L. R. A., 113; Railway Co. v. Lear, 15 S. W., 1030 (Ark.); Loewenberg v. Railway Co., 19 S. W., 1051 (Ark.); Moses v. Port Townsend So. Ry., 55 Am. & Eng. R. R. Cases, 416; Marsh v. Union Pac. Ry. Co., 9 Fed. Rep., 873; Illinois Cent. R. Co. v. Brockhaven, 16 So. Rep., 252; Evansville, etc., Ry. Co. v. Marsh, 57 Ind., 505, 18 Am. R. Rep., 482; Gulf, C. & S. F. Ry. Co. v. Dimmitt (Texas Civ.), 42 S. W., 583; 5 Am. & Eng. Ency. Law, 409, 410.

PLEASANTS, Chief Justice.—This suit was brought by appellee against the appellant and the Galveston, Harrisburg and San Antonio Railway Company and the San Antonio and Aransas Pass Railway Company, to recover damages for the alleged wrongful detention by the defendants of 699 head of cattle shipped by appellee over the railroad lines of said defendant companies from Pierce Station in Wharton County to Hebbronville in Duval County.

The petition alleges in substance that the Galveston, Harrisburg and San Antonio Railway Company owns and operates a line of railway extending from the town of Pierce, Texas, to Beeville, in Bee County, Texas, and there connects with the line of railway owned and operated by the defendant, the San Antonio & Aransas Pass Railway Company; that said last-named defendant owns and operates a line of road which extends from said town of Beeville to the town of Alice, and there connects with a line of railway owned and operated by defendant the Texas Mexican Railway Company, which said defendant owns and operates a line of railway extending from the town of Alice to the town of Hebbronville, and that said several railway companies owned and operated said respective lines of road between said points named on the 22d day of June, 1905; that said several respective lines of road did then constitute a through line of transportation from said town of Pierce to said town of Hebbronville; that said railway companies were at said time engaged in the business of common carriers for hire between said points aforesaid. That on June 22, 1906, plaintiff owned 699 head of beef cattle, which he desired to ship from said town of Pierce to said town of Hebbronville, and on said date he delivered said cattle to defendant the Galveston, Harrisburg & San Antonio Railway Company, and paid said railway company all the charges due and demanded by said railway company for the transportation of said cattle from Pierce to Hebbronville, as aforesaid, and said Galveston, Harrisburg & San Antonio Railway Company then and there received said cattle to be transported by it and its connecting carriers on a through contract of shipment from said town of Pierce to said town

of Hebbronville, and there to be promptly delivered to plaintiff; that said defendants, the San Antonio & Aransas Pass Railway Company and the Texas Mexican Railway Company recognized, acquiesced in and acted on said contract so made by the plaintiff for the transportation of said cattle, and plaintiff says that defendant had full knowledge of the fact that plaintiff had prepaid the freight charges on said cattle at Pierce as aforesaid, and with full knowledge of said fact, recognized said contract and received and transported said cattle, as hereinafter set out; that said cattle were delivered to defendant the Galveston, Harrisburg & San Antonio Railway Company on the 22d day of June, 1906, at six o'clock p. m., and were transported by said defendants on their several lines of railway aforesaid to Hebbronville, reaching said place at about 1:30 p. m. on the 23d day of June, 1906, and immediately upon the arrival of said cattle at Hebbronville, plaintiff demanded possession of his said cattle of said Texas Mexican Railway Company, and said defendant, acting by and with the advice and consent of said other defendants, and being instigated thereto by said other defendants, wilfully, and without authority of law, demanded of plaintiff $21 freight in addition to and in excess of the freight agreed upon between plaintiff and the said Galveston, Harrisburg & San Antonio Railway Company, and which said freight agreed upon and paid by plaintiff to said railway company, as aforesaid, amounted to the sum of $609, and which said sum of freight charges were clearly shown by and specified in said contract of shipment, and said defendants, acting together, with the intention of extorting from this plaintiff said additional sum of $21, wilfully, and without authority of law, refused to deliver plaintiff's said cattle to him, although plaintiff made repeated demands upon the agent of said Texas Mexican Railway Company, Hebbronville, for said cattle, but said railway companies, acting together as aforesaid, refused to permit plaintiff to take possession of said cattle from 1:30 p. m. until 7 p. m. on said 23d day of June, 1906, when said agent at Hebbronville offered to deliver said cattle to plaintiff without the payment of said additional freight charges; that it was impossible for plaintiff, on account of its being late in the day, and on account of the near approach of night, to take charge of and properly care for said cattle when they were offered to him, as aforesaid, and by reason of the detention of said cattle by the Texas Mexican Railway Company, acting together with said other defendants, as aforesaid, he was compelled to leave his said cattle confined in the pens at Hebbronville until the morning of the 24th of June, 1906; that said agent knew, or should have known, that it was impossible for plaintiff to take his said cattle at said late hour in the day; that said cattle had already been confined in the pens and in said cars when they reached the town of Hebbronville for a period of twenty-four hours, without food, and by reason of the unlawful, wilful and outrageous conduct of defendants, acting together as aforesaid, plaintiff's said cattle were held in confinement without food for a further period of seventeen hours beyond and in excess of the time necessary in the proper and speedy transportation and delivery of said cattle to him at Hebbronville, and that, by reason thereof, the said cattle became sick from want of food and sufficient supply of water, and were damaged

thereby in the sum of $1,647.50; that, in addition thereto, defendants are liable to plaintiff for a penalty in the sum of $609, on account of their unlawful and wilful conduct in attempting to force plaintiff to pay said sum of $21 in excess of the freight agreed upon and specified in said contract of shipment, and failing and refusing to deliver said cattle to plaintiff, upon his demand for same, as aforesaid.

Then follow allegations of additional damages by reason of hand hire, horse hire, and other expenses incurred.

It is further alleged, in substance, that if plaintiff is mistaken in his allegations that the contract made by him with the Galveston, Harrisburg & San Antonio Railway Company, as before set out, was recognized and acquiesced in by the other defendants, and that said defendants, knowing that the freight on said cattle had been paid, acted together in wrongfully withholding said cattle from plaintiff, as before alleged, then plaintiff alleges and shows to the court that he made said contract with said defendant Galveston, Harrisburg & San Antonio Railway Company, and said defendant, by the terms of the contract, agreed to protect plaintiff in the through rate of freight specified in said contract and paid to it by plaintiff; that if said defendant, the Galveston, Harrisburg & San Antonio Railway Company, contracted with plaintiff for a lower rate of freight on said cattle than the regular rate from Pierce to Hebbronville, that such fact was entirely unknown to plaintiff, and if such was not intended by said defendant, then plaintiff says the erroneous freight charge so given to him was the result of the negligence and carelessness of said defendant's agent at Pierce; that, relying upon the representations of said defendant's agent at Pierce, and the stipulations contained in said contract, plaintiff believed he had paid all the freight charges due and collectible for the transportation of said cattle, and plaintiff relied upon the defendant, the Galveston, Harrisburg & San Antonio Railway Company, to notify said other defendants, the San Antonio & Aransas Pass Railway and the Texas Mexican Railway Company, of the fact that the freight charges on said cattle had been paid, and in the event it should be found by court that said defendant, the Galveston, Harrisburg & San Antonio Railway Company did not so notify said other defendants, then plaintiff would show to the court that same was due to the carelessness and negligence of said defendant, and resulted in the defendant the Texas Mexican Railway Company demanding of plaintiff said sum of $21 additional freight charges, supposed to be due on said cattle, and the holding of said cattle, because of plaintiff's refusal to pay said $21; that plaintiff would show to the court that said negligence and carelessness of the defendant, the Galveston, Harrisburg & San Antonio Railway Company, in the first place, in fixing and charging an erroneous freight rate, as aforesaid, and, in the second place, in not notifying said other defendants that the freight charges on said cattle had been paid, as aforesaid, either one or both were the immediate and proximate cause of all the damages sustained by the plaintiff.

Appellant answered by general and special demurrers, by general denial and four special pleas, substantially as follows:

1. Appellant denied that it was guilty of the negligence alleged by plaintiff; that it was ready and willing to make delivery of the ship-

ment on arrival at destination, and would have made prompt delivery of the same, and did tender to plaintiff the delivery of said shipment on the payment of the freight charges legally due, and which had not heretofore been paid by the plaintiff; that the sum of $609 alleged to have been paid by plaintiff as the agreed charges agreed upon by plaintiff and the Galveston, Harrisburg & San Antonio Railway Company, was short of the legal charges, according to the published rate and the rate promulgated by the Railroad Commission of Texas for the shipment alleged, and that the amount appellant demanded, in addition to said sum of $609, viz., $21, was the shortage which appellant was required by law to demand and collect, and that if any delay was occasioned in the delivery of said cattle, such delay resulted from the delay and refusal of plaintiff to pay the said legal freight charges, according to the published rate and the rate fixed by the Railroad Commission of Texas, and in so refusing to pay said additional charges was guilty of negligence contributing to his damages.

2. That if it were true that the Galveston, Harrisburg & San Antonio Railway Company fixed a rate of $609 for the shipment of appellee's cattle, that nevertheless appellant was not bound thereby, and never ratified same; that, on the contrary, appellant and appellee entered into contracts, in writing, for the transportation of said cattle from Alice to Hebbronville at tariff rates, being the rate fixed by said Railroad Commission of Texas, which, from Pierce to Hebbronville, would be fifteen cents per hundred, or an aggregate of $630 for the entire shipment.

3. That if appellee was injured at all, said injuries were due to the refusal of appellee to pay the freight rate fixed by the Railroad Commission after he had been fully informed of the true rate as fixed by said Commission for the shipment of said cattle, and after he had been informed that the rate as originally fixed by the Galveston, Harrisburg & San Antonio Railway Company was erroneous, the appellee well knowing that the rate as originally given him by the agent of the Galveston, Harrisburg & San Antonio Railway Company was subject to correction, so as to conform to the rates prescribed by said Railroad Commission; that in failing and refusing, under the circumstances, to pay said additional sum, appellee was guilty of negligence, which contributed to causing his injuries.

4. That by the terms of the various contracts or bills of lading made by appellee with the various defendants to this suit for the transportation of his cattle, it was provided that said cattle were shipped thereunder subject to correction as to rate, weight and classification, so as to conform to the rates, rules and regulations prescribed by the Railroad Commission of Texas; that, according to such rates, rules and regulations, the amount of the freight charges on said shipment was the sum of $630, in place of the sum of $609, paid by appellee, and therefore, according to the terms of said contracts, appellee was not entitled to delivery of said cattle until he had paid the balance of the freight charges due as fixed by said Railroad Commission.

The defendant, the Galveston, Harrisburg & San Antonio Railway Company, answered by general and special demurrers, and general de-

nial and various special pleas. By said special pleas said defendant pleaded:

1. The terms of a written contract for the transportation of said cattle by said defendant, whereby it agreed that said defendant should only be liable for the transportation of said cattle from Pierce to Beeville, and not liable for any injuries to said cattle beyond said point; that it had fully complied with its contract by transporting said cattle to Beeville with due care and dispatch and delivering same to the San Antonio & Aransas Pass Railway Company for further transportation.

2. That said written contracts specially provided that same were subject to correction as to rate, weight and classification, so as to conform to the rates, rules and regulations of the Railroad Commission of Texas, and that the sum of $609, claimed by appellee as the rate named in said contract, was erroneous, and was made by mistake of the agent of said defendant, who had no authority to make such rate, and same was not in accordance with the rate for such shipments as fixed by the Railroad Commission, but that said rate should have been fixed at $630, and sought recovery for the sum of $21, the difference between said sum and the sum paid by appellee, $609.

3. That if appellee was damaged, same was due to his refusal to pay the rate of freight as fixed by the Railroad Commission of Texas for such shipment, after he had been fully informed what the true rate was, and after he had been informed that the original rate fixed was erroneous; that, in refusing to pay said rate, under the circumstances, appellee was guilty of negligence contributing to his injuries.

The San Antonio & Aransas Pass Railroad Company answered by general and special demurrers and general denial and various special pleas, whereby it was alleged:

That said defendant was not bound by any rate fixed by the Galveston, Harrisburg & San Antonio Railway Company which was not ratified by said defendant; that said defendant transported appellee's cattle from Beeville to Alice under written contracts at tariff rates fixed by the Railroad Commission from Pierce to Hebbronville, which was fifteen cents per hundred pounds, or an aggregate of $630.

That said defendant accepted said shipment and transported same under and by virtue of written contracts whereby it only undertook to transport and become responsible for the transportation of same over the line of its road from Beeville to Alice.

That the injury and damage to appellee, if any, was due to his refusal to pay the true rate of freight fixed by the Railroad Commission of Texas, after he had been fully advised that the rate originally fixed by the Galveston, Harrisburg & San Antonio Railway Company was erroneous, said appellee well knowing that the rate as originally given him by the agent of the Galveston, Harrisburg & San Antonio Railway Company was subject to correction, so as to conform to the rates prescribed by the Railroad Commission; that the refusal of appellee to pay said freight rate, as prescribed by said Railroad Commission, constituted negligence on his part, which contributed to causing said injuries and damages.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff against the appellant, the Texas and Mexican

Railway Company, for the sum of $1,647.50, claimed by plaintiff as damages for depreciation in value of said cattle caused by their detention by said defendant, and in favor of the other defendants, that plaintiff take nothing as against them. From this judgment the Texas and Mexican Railway Company has appealed, and plaintiff has also perfected a cross-appeal against the Galveston, Harrisburg & San Antonio Railway Company and seeks a reversal of the judgment in favor of said defendant in event his judgment against appellant is not affirmed.

The facts found by the trial court are as follows:

"1. I find that on or about the 22d day of June, 1906, plaintiff was the owner of 699 head of beef cattle at or near the town of Pierce in Wharton County, Texas, which he desired to ship from the said town of Pierce to the town of Hebbronville in Duval County, Texas.

"2. That before plaintiff purchased all of said cattle he made inquiry of some person whom he did not know, not the superintendent, in the office of the Galveston, Harrisburg & San Antonio Railway Company in the building in which is situated the division headquarters of said company, at Victoria, Texas, as to the rate on said cattle from El Campo, Texas, to Hebbronville, Texas, from which point the plaintiff first intended to ship his cattle, and was in said office of said Galveston, Harrisburg & San Antonio Railway Company, informed that said rate was $29 per car. That plaintiff then purchased a part of said cattle at or near El Campo, after having been also informed by the agent of the Galveston, Harrisburg & San Antonio Railway Company at El Campo that the rate on said class of cattle from El Campo to Hebbronville was $29 per car. That said cattle were situated, when bought by plaintiff, at a point about equal in distance from El Campo and Pierce. That on account of local conditions at the two places, El Campo and Pierce, it was decided by plaintiff to ship his said cattle from Pierce instead of El Campo. Before deciding to ship his cattle from Pierce instead of El Campo plaintiff was informed by said agent of the Galveston, Harrisburg & San Antonio Railway Company at El Campo that the rate on said cattle from Pierce to Hebbronville would be and was the same as said rate on said cattle would be and was from El Campo to Hebbronville, and was also informed by the agent of the Galveston, Harrisburg & San Antonio Railway Company at Pierce, after discussion of the rate with said agent at Pierce, who at first charged $30 per car, that before plaintiff would consent to ship his said cattle from Pierce instead of El Campo, he was assured by the said agent of the Galveston, Harrisburg & San Antonio Railway Company, both at El Campo and Pierce, as aforesaid, that said rate was the same, to wit, $29 per car from Pierce to Hebbronville.

"3. That plaintiff relied on said representations of said agent at El Campo and of said agent at Pierce as to said rate, and that plaintiff entered into a binding contract with defendant, the Galveston, Harrisburg & San Antonio Railway Company, through its agent at Pierce, for the transportation of said cattle from Pierce to Hebbronville for the remuneration of $29 per car, aggregating on the twenty-one cars of stock the sum of $609, which said sum of $609 plaintiff paid to said agent of the Galveston, Harrisburg & San Antonio Railway Company

at Pierce, when said contract was made, desiring, intending and believing that he was paying the regular and full amount of freight charges on said cattle from Pierce to Hebbronville.

"4. I find that said rate was an erroneous one, and was quoted through error on the part of the agents of the Galveston, Harrisburg & San Antonio Railway Company. That the rate as fixed by the Railroad Commission of Texas on such shipment from Pierce to Hebbronville is $30 per car, or an aggregate of $630 on such shipment. The $21 demanded by the agent at Hebbronville was the difference between $609, collected as the freight between Pierce and Hebbronville, and the amount of freight as fixed by the Railroad Commission of Texas.

"5. I find that plaintiff had no knowledge of said rate so fixed by the Railroad Commission of Texas, and had no knowledge of said error on the part of the agents of the Galveston, Harrisburg & San Antonio Railway Company, and did not in any manner contribute thereto. That plaintiff paid said amount of $609, believing that same was correct, and relying on the said agent of the Galveston, Harrisburg & San Antonio Railway Company at Pierce to quote him the correct rate on said shipment.

"6. I find that bills of lading were issued by the Galveston, Harrisburg & San Antonio Railway Company to plaintiff for the shipment of said cattle from Pierce, showing the destination of said cattle to be Hebbronville. That a rate of $29 per car was stated as the rate in said bills of lading.

"7. That said cattle were transported by said Galveston, Harrisburg & San Antonio Railway Company from Pierce on the 22d day of June, 1908, to Beeville, Texas, and there delivered to the San Antonio & Aransas Pass Railway Company, and by said San Antonio & Aransas Pass Railway Company were transported from Beeville, Texas, to Alice, Texas, and there delivered to the Texas Mexican Railway Company to be by it transported from Alice to Hebbronville. That upon arrival of said cattle at Alice, plaintiff informed the Texas Mexican Railway Company's agent there that freight on said cattle was prepaid, and that said agent knew that the freight was all prepaid, and that same was $609, when he accepted same for transportation.

"8. That said cattle arrived at Hebbronville at about 1 o'clock p. m., and were unloaded at about 1:30 o'clock p. m., on the 23d day of June, 1906. That the Texas Mexican Railway Company's agent at Hebbronville then demanded of plaintiff, J. P. Reed, $21 additional freight, and refused to deliver said cattle without payment of same. That plaintiff informed said agent that the entire freight charges had been prepaid by him at Pierce, and requested delivery of the cattle, informing said agent that he must have said cattle early in the evening so he could handle them and carry said cattle to water and grass. That said agent of the Texas Mexican Railway Company refused to deliver said cattle to plaintiff without the payment of said $21 additional freight charges until about 7 o'clock p. m. on said date, when said agent sought to deliver said cattle to plaintiff without the payment of said charges. That owing to the lateness of the hour, and the fact that plaintiff could not find water and grass for his said cattle, he could not receive the cattle and safely handle them at the late hour

the cattle were tendered him. That plaintiff received said cattle about 7:15 o'clock next morning, June 24, 1908.

"9.  I find that said cattle were confined in the pens of the Texas Mexican Railway Company at Hebbronville after their arrival for a period of about 17 hours longer than would have been the case had they been delivered to plaintiff when he demanded same.  That said cattle had no food and an insufficient supply of water, and were damaged by reason of such excessive confinement and improper supply of food and water, according to the evidence, in the sum of $1,647.50.

"10.  There is no discrimination against other shippers shown by the evidence in this case.

"11.  The evidence does not show that there was any complicity or agreement between the Galveston, Harrisburg & San Antonio Railway Company or the San Antonio & Aransas Pass Railway Company and said Texas Mexican Railway Company to so hold said cattle for the payment of any additional freight charges, but that the same were so held by said Texas Mexican Railway Company without the knowledge or consent of the Galveston, Harrisburg & San Antonio Railway Company.

"12.  I find that there was a sufficient sum of the amount of prepaid freight to have more than satisfied the tariff rates of the Texas Mexican Railway Company and of the San Antonio & Aransas Pass Railway Company on said shipment."

The undisputed evidence shows that it was the intention of both appellee and the agent of the Galveston, Harrisburg & San Antonio Railway Company that the cattle should be shipped at the regular rate.  Appellee does not intimate in his testimony that he requested or desired any special rate, and when the controversy arose between him and the agent of appellant at Hebbronville he only insisted that the rate named in the bill of lading was the correct rate, and told said agent that if he would permit him to take the cattle without paying the additional charge of $21, if he found upon investigation that the rate claimed by said agent was the regular or Commission rate, he would pay it.

The contract of shipment made by the initial carrier was for the transportation and delivery of the cattle to the connecting line at Beeville, and contained the usual clause limiting the liability of the carrier as to said shipment to its own line, except as to the protection of the through rate of freight.  Upon the face of the contract and immediately above the caption, "Live Stock Contract," "Limiting the Liability of the Carriers," which is printed in capital letters across the center of the page and is immediately followed by the date of the execution of the contract and its various provisions and recitals, is printed in plain black type the following notice:

"This bill of lading is given subject to correction as to rate, weight and classification, so as to conform to the rates, rules and regulations prescribed by the Railroad Commission of Texas, and to the rates, rules and regulations adopted, according to law, for interstate shipments."

Plaintiff testified that he did not read the contract before signing it, and did not know that the clause above quoted was contained

therein or appeared thereon as above shown. When the cattle were received by the Aransas Pass Railway Company at Beeville new contracts of shipment were made, by which said company undertook to transport said cattle to Alice and there deliver them to the connecting carrier. These contracts do not name or specify the freight rate further than by the use of the word "Tariff," the clause as to charge for said shipment being as follows: "And the party of the first part covenants and agrees that the freight ·charges from point of shipment to final destination shall only be the sum of tariff ...... dollars per car."

Each of said contracts have the notification above quoted as to rate named being subject to correction so as to conform to that prescribed by the Railroad Commission printed upon a slip of paper which was pasted upon the face of the contract.

When the cattle reached Alice new contracts of shipments were made with the appellant road, but appellee testified that contracts were not issued by appellant for all of the carloads. These contracts are not in the record, and there is no evidence as to their terms. When the agent of appellant at Hebbronville informed appellee that the rate named in the waybill and the contract with the initial carrier was erroneous, and that there was an additional charge of $21, appellee refused to pay it and the agent held the cattle until he obtained authority to release them. When he offered to deliver them to appellee he refused, for the reason stated in the findings of the court before set out, to receive them until the next morning. Appellee had the money in his pocket and could have paid the additional charge and released the cattle. Upon cross-examination he testified that he told McGovern (the agent of appellant at Hebbronville) that if, upon investigation, he found there was an honest mistake he would pay the $21, if McGovern would release the cattle at once. He says:

"I would have been willing to pay the difference in any event, if it was an honest mistake, if he had turned my cattle loose, because one dollar per car, $21, did not pay me to hold there. It did not pay me to hold my cattle there for $21; that was a small amount, comparatively speaking. I was able to 'pay the dollar per car. I told McGovern that I could get the money; I had the money in my pocket. I had the money in my pocket to pay it; I had the money in my pocket. I was able to pay it; I had the money in my pocket, enough to pay it. I did not have the money in my pocket for that, but I had it. I could have paid it if I had wanted to do so. I had the money to pay it. As a matter of fact I did not pay it. I told McGovern that I had the money in my pocket and could pay it. I let the cattle be· held under the circumstances I have stated."

Under appropriate assignments of error the appellant contends that the facts found by the trial court and established by the undisputed evidence show no liability on the part of appellant, and judgment should have been rendered in its favor. We think this contention should be sustained.

We shall not attempt to reconcile the apparent conflict in the opinions in the cases of Thompson v. Railway Company, 32 S. W., 427, and Railway Company v. Kern, 108 S. W., 187. It may be that these opinions are not necessarily conflicting. While there is no affirmative-

provision of the statute forbidding a railroad from fixing a lower rate for the transportation of freight than that prescribed by the Railroad Commission, the statute does prohibit discrimination in charging of one shipper a different rate from that charged another, and it would seem that unless the lower rate charged in the particular case is shown to have been open to all shippers, a special contract for carriage at such rate would be void because prohibited by the statute against discrimination. The trial court found, however, that there was no discrimination in this case, and this finding is clearly sustained by the undisputed evidence which shows that the rate specified in the contract was fixed by mistake, it being the intention of both parties to the contract that the regular or Commission rate should be charged.

Appellee contends that the notation at the head of the contract, that the rate therein named was subject to correction so as to conform to the rate prescribed by the Railroad Commission, not being in the body of the contract or referred to therein is not a part thereof, and appellant, not knowing that this notice was written on the face of the contract, is not bound thereby.

This contention might be correct if the notation in any way changed the contract actually made by the parties, but the undisputed evidence shows that the parties to the contract intended to ship the cattle at the regular rate. No special rate was asked by appellee, and when the additional charge was made he expressed a willingness to pay it if, upon investigation, he found the rate specified in the contract was not correct. Such being the facts, it is immaterial whether or not he read the notation on the contract. He knew the fact, as stated in said notation, that the contract was made with the understanding that the rate to be charged him was the regular or commission rate, and such understanding entered into and formed a part of the contract.

It seems to us that under these circumstances, even if appellant was shown to have been a party to the contract, appellee would be liable for the additional charge, and appellant having the right under the statute (Texas & N. O. Ry. Co. v. Rucker, 38 Texas Civ. App., 591) to hold all of said cattle until all of the freight was paid, appellee can not complain of the injury to his cattle caused by their detention, unless appellant was negligent in caring for said cattle while they were in its possession, and no such negligence is alleged in the petition or shown by the evidence.

But the evidence in this case fails to show that appellant was bound by the contract made with the initial carrier. It was bound under the law to accept and forward the cattle, and its acceptance of the shipment would not necessarily bind it to carry out the contract made with the Galveston, Harrisburg & San Antonio Railway Company. The evidence shows that when appellant received the cattle for transportation new contracts were made with the shipper, at least for the transportation of part of the cattle, but what the terms of these contracts were is not shown, and it can not be presumed that they bound appellant to ship the cattle at a rate less than that allowed by law, nor will a contract of this kind be implied merely from the fact that the agent of appellant who received and forwarded the shipment to its destination was informed that the freight had been paid, and knew the

amount which had been so paid. It was not such agent's duty to investigate and determine whether the amount so claimed to have been paid by the shipper was the correct amount, that duty being one which rested upon the agent at the point of destination when the cattle were delivered to the shipper or his consignee.

We think under the undisputed evidence the appellee was liable for the additional charge, and the detention of the cattle by the appellant being caused solely by his refusal to pay said charge, appellant is not liable for damages to the cattle caused by such detention, and the judgment of the court below against appellant should be reversed and judgment here rendered that appellee take nothing by his suit against it.

The trial court, as before shown, found that the Galveston, Harrisburg & San Antonio Railway Company did not agree to or acquiesce in the detention of the cattle by the appellant, and therefore was not responsible for the damages caused thereby.

By his cross-appeal, appellee attacks this conclusion, and under proper assignments of error contends, first, that the road above named having contracted to transport appellee's cattle from Pierce station to Hebbronville for $29 per car, or a total sum of $609, and expressly agreed to protect the rate named in said contract, is liable for any damages caused appellee by its failure to protect said rate; and second, that if the rate quoted by said railroad company was not the correct rate, said company was negligent in so informing appellee, and the injury to appellee's cattle having been proximately caused by such negligence, said railroad is liable therefor.

The first of these contentions has been disposed of by our conclusion that said railroad company did not in fact contract to transport said cattle at a less rate than that fixed by the Railroad Commission, but that it was fully understood by both parties to said contract of shipment that the regular rate should be paid, and the rate of $29 per car specified in said contract was fixed under the mistaken belief that such was the Commission rate.

The second contention above mentioned can not be sustained, because if it be conceded that said railway company was guilty of negligence in quoting an incorrect rate, the undisputed evidence shows that such negligence was not the proximate cause of the damage to appellee's cattle, but such damage was due to appellee's refusal to pay the correct charge when demand was made upon him therefor.

The case might be different if appellee had not had the money with which to pay such charge. If said railway company could be held bound to protect the rate of $29 per car specified in the contract, it may be that, notwithstanding appellee had the $21 with which to pay the additional charge, he would not have been required to prevent the damages caused by the detention of his cattle by paying said sum, and could have refused to pay and held said railroad company liable for such damage, but this is not the case presented by this record. Appellee was liable for the additional charge as we interpret the contract, and having the money in his pocket with which to pay it, he could not refuse to do so and then claim that the negligence of the railroad company in quoting him an incorrect rate was the proximate

cause of the damage resulting from the detention of his cattle. Damages which could not be reasonably anticipated as the probable result of an act or omission can not be held to have been proximately caused by such act or omission, and we do not think it could have been reasonably anticipated by the railroad company that its mistake in naming an incorrect rate in said contract would result in the refusal of appellee to pay the proper rate when demand was made therefor and the consequent damage to his cattle caused by such refusal. It follows that the judgment below in favor of the Galveston, Harrisburg & San Antonio Railway Company should be affirmed.

*Reversed and rendered in part and affirmed in part.*

Writ of error refused.